MONICA R. THOMPSON (031575)
monica.thompson@dentons.com
DENTONS US LLP
2398 East Camelback Road
Suite 850
Phoenix, Arizona 85016-9007
Telephone:   (602) 508-3900
Facsimile:   (602) 955-1002

*Attorneys for Plaintiff XL Insurance America, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| XL Insurance America, Inc., | No. _____ |
| Plaintiff, | |
| vs. | **PLAINTIFF XL INSURANCE AMERICA, INC.'S COMPLAINT FOR DECLARATORY JUDGMENT** |
| Collin Reeves, Zoe Torres, Christopher Dillard, and Shannon Dillard, | **(JURY TRIAL DEMANDED)** |
| Defendants. | |

Plaintiff XL Insurance America, Inc. ("XL"), by and through its counsel, for its Complaint for Declaratory Judgment, alleges as follows:

## NATURE OF ACTION

1.   For the reasons and based on the grounds more fully described below, XL seeks judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring that defendant Collin Reeves ("Reeves"), or anyone claiming through him derivatively, by way of assignment or otherwise, is not entitled to coverage under Following Form Excess Liability Policy number US00086418LI18A issued by XL (the "XL Excess Policy") to Hines Interests Limited Partnership with respect to any judgment entered against Reeves, or that may ultimately be entered and finalized against Reeves, in *Torres, et al. v. Collin Reeves*, Case No. CV2019-015647, pending in the Superior Court of Maricopa County, Arizona (the "Underlying

- 1 -

Lawsuit"), and involving an automobile collision that resulted in the deaths of two individuals. Zoe Torres, Christopher Dillard and Shannon Dillard, each a plaintiff in the Underlying Lawsuit and in whose favor judgment was entered, are named as defendants in this action (collectively, the "Other Defendants").

2. Reeves and the Other Defendants contend that Reeves qualifies as an Insured under the XL Excess Policy, and that either Reeves directly, or the Other Defendants, derivatively or by way of assignment, and/or as judgment creditors, have rights that will entitle them to indemnification under the XL Excess Policy for amounts awarded in the Underlying Lawsuit and within the limits of the XL Excess Policy. XL disputes those contentions.

3. A real, substantial, and justiciable controversy exists between and among the parties with respect to their respective rights, duties, and obligations with regard to the XL Excess Policy. That controversy is appropriately adjudicated by this Court under 28 U.S.C. §§ 2201 and 2202.

## PARTIES

4. XL is a Delaware corporation with its principal place of business in Connecticut.

5. Upon information and belief, Reeves is a natural person who resides in Arizona, and thus is a citizen of Arizona.

6. Zoe Torres is a plaintiff in the Underlying Lawsuit, and on information and belief, is a natural person who resides in Arizona and thus is a citizen of Arizona. Zoe Torres is named as an interested and necessary party to this litigation to be bound by the determination of this Court.

7. Christopher Dillard is a plaintiff in the Underlying Lawsuit, and on information and belief, is a natural person who resides in Arizona and thus is a citizen of Arizona. Christopher Dillard is named as an interested and necessary party to this litigation to be bound by the determination of this Court.

8. Shannon Dillard is a plaintiff in the Underlying Lawsuit, and on information and belief, is a natural person who resides in Arizona and thus is a citizen of Arizona. Shannon Dillard is named as an interested and necessary party to this litigation to be bound by the determination of this Court.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 2201 and 2202. Pursuant to 28 U.S.C. § 1332, there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue is proper in this District, pursuant to 28 U.S.C. § 1391. Each of the defendants has sufficient minimum contacts with this judicial district to confer personal jurisdiction in this Court.

## THE UNDERLYING LAWSUIT

11. The Underlying Lawsuit arises out of an automobile collision that occurred on October 5, 2018 involving a motor vehicle owned and driven by Reeves, and another vehicle in which Jesel Morales, deceased, and Audrianne Dillard, deceased ("Decedents") were traveling, and died as a result (the "Collision").

12. The Other Defendants here, as the surviving parents of Jesel Morales and Audrianne Dillard, filed the Underlying Lawsuit against Reeves and others on December 20, 2019. As amended and set forth in a Third Amended Complaint ("Complaint," attached as Exhibit 1), the Other Defendants alleged in the Underlying Lawsuit that Reeves's conduct directly and wrongfully caused Decedents' deaths, and sought to hold him directly liable for special, general, and punitive damages in connection with the Collision.

13. Among other things, the Complaint alleged that in driving under the influence of alcohol, Reeves "acted with a reckless and evil mind and consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others . . . and is thereby liable for punitive damages." (Ex. 1, at ¶ 23.)

14. The Underlying Lawsuit went to trial before a jury solely as to Reeves. On the issue of punitive damages, the jury was instructed that the imposition of punitive

DENTONS US LLP
2398 EAST CAMELBACK ROAD, SUITE 850
PHOENIX, ARIZONA 85016-9007
(602) 508-3900

damages against Reeves might be awarded if it found, among other things, that Reeves's "misconduct was intended to cause harm" or was "outrageous, oppressive or intolerable," and that Reeves "knew or intentionally disregarded that his conduct created a substantial risk of significant harm to others." (*See* Jury Instructions excerpts attached as Exhibit 2.)

15. On August 22, 2024, the jury returned a verdict finding Reeves liable, and awarding compensatory and punitive damages to each of the Other Defendants in this action. Judgment thereafter was entered on October 15, 2024 (the "Judgment," attached as Exhibit 3). Post-trial and appellate proceedings in the Underlying Lawsuit have yet to be concluded.

## THE COLLISION

16. As alleged in the Underlying Lawsuit, on and prior to October 5, 2018, Reeves was employed by Hines GS Properties, Inc. ("Hines GS"). On information and belief, at and during that time, Hines GS was a Delaware corporation engaged in the business of developing, leasing, buying, selling, and managing commercial real estate for itself and clients at locations throughout at least the United States and Canada, including Arizona, and headquartered in Texas.

17. On information and belief, as of the time of the Collision, Hines GS provided operation/management services for the Renaissance Square Building located in Phoenix, Arizona, and employed Reeves as an Engineer Manager to work at that location.

18. Hines Interests Limited Partnership ("Hines Interests") is the only entity identified as a Named Insured on the Declaration pages of each of the Policies. On information and belief, at all pertinent times, Hines Interests was headquartered in Texas. The Policies do not specify whether, and if so, the extent to which, Hines GS, at the time of the Collision, was affiliated with, or owned or controlled in whole or part by, Hines Interests, or otherwise qualified as a Named Insured thereunder.

19. The Complaint in the Underlying Lawsuit alleges that on the date of the Collision and having concluded work for the day, Reeves drove his personal vehicle to an event sponsored by the Building Owners and Managers Association of Greater Phoenix and

hosted at the premises of Salt River Project Employees Recreational Association, Inc., located in Tempe, Arizona (the "Event").

20. While the Complaint in the Underlying Lawsuit alleged Reeves "was in the course and scope of employment and/or acting as an agent for Defendant Hines [Hines GS] at the time of the negligent events alleged . . . ." (Exhibit 1 at ¶ 25), that issue was not adjudicated in the Underlying Lawsuit as Hines GS, originally named as a defendant in the Underlying Lawsuit, was dismissed with prejudice prior to trial.

21. Outside the scope of his employment by Hines GS, and not in the business or personal affairs of Hines GS or Hines Interests, Reeves consumed excessive amounts of alcohol at the Event, and left the Event in his personal vehicle admittedly with the intention of driving while intoxicated.

22. Reeves furthermore has admitted that, (i) he was not instructed by Hines GS to attend the Event as part of his employment by Hines GS; (ii) he was not required to attend the Event as part of his employment by Hines GS; (iii) he was not compensated by Hines GS for attending the Event; (iv) he did not participate in the Event beyond attending; (v) he did not perform any work for Hines GS at the Event; and (vi) Hines GS did not direct or control his actions at the Event.

23. Reeves has testified under oath that, at the time of the Event (and for years prior), he was aware of the dangers of drinking and driving. Reeves previously had been convicted for driving while intoxicated. Reeves furthermore was aware when he left the Event that he was impaired as a result of being intoxicated, yet made a conscious choice to drive in that condition anyway. Reeves knew that his doing so endangered, and created a substantial risk of harm or death to, others. Despite being cognizant of the fact that he was impaired, and his awareness of the danger to others, Reeves left the Event driving his own vehicle – not to return to work, but rather to return to his home. The Collision occurred when Reeves failed to obey a red traffic signal, causing his vehicle to collide with a vehicle occupied by the Decedents. Reeves's blood alcohol level at the time was determined to be substantially in excess of the Arizona legal limit of 0.08 under A.R.S. § 28-1381.

24. As a result of the Collision, Reeves was charged with, and pled guilty to, felony endangerment under A.R.S. § 13-1201(A), which states that "[a] person commits endangerment by recklessly endangering another person with a substantial risk of imminent death or physical injury." Under Arizona law, a person acts "recklessly" where the "person is aware of and consciously disregards a substantial and unjustifiable risk that the result will occur or that the circumstance exists. . . . ;" and "voluntary intoxication" cannot be asserted to disprove awareness or conscious disregard.

## THE INSURANCE POLICIES

25. The terms of three liability insurance policies (collectively, the "Policies"), including the XL Excess Policy, inform the coverages available under, and excluded by, the XL Excess Policy, as follows: (i) the XL Excess Policy, itself, issued to Hines Interests for the policy period October 1, 2018 to October 1, 2019, which provides per occurrence limits of $25 million in excess of the $25 million in per occurrence limits set forth in the "Lead Underlying Policy" (a true and correct copy of the XL Excess Policy is attached as Exhibit 4); (ii) the "Lead Underlying Policy," identified as Umbrella Liability Policy No. 0306-9798, issued to Hines Interests for the same policy period by Allied World National Assurance Company ("Allied"), which provides $25 million in per occurrence limits in excess of "Scheduled Underlying Insurance" (the "Allied Umbrella Policy," a true and correct copy of which is attached as Exhibit 5); and (iii) the pertinent "Scheduled Underlying Insurance" identified in the Allied Umbrella Policy, namely Business Auto Policy No. BAP 5087524-13 issued to Hines Interests for the same policy period by Zurich American Insurance Company ("Zurich"), which provides per occurrence limits of $1 million (the "Zurich Policy," a true and correct copy of which is attached as Exhibit 6.)[1]

---

[1] Each of the attached Policies have been separately paginated here for ease of reference, prefixed as XL, AW and ZUR, respectively. Bolded terms referencing policy language in the paragraphs that follow reflect language bolded in the referenced policy.

- 6 -

**A.     The XL Excess Policy**

26.    The XL Excess Policy provides that "except as may otherwise be endorsed to this Policy," the XL Excess Policy follows "the same terms, definitions, exclusions and conditions as are, at inception hereof, contained in the Lead Underlying Policy" – i.e., the Allied Umbrella Policy. XL016.

27.    The XL Excess Policy furthermore provides:

> The Company hereby agrees, subject to the terms, definitions, exclusions and conditions contained in this Policy, to pay those sums which the Insured shall be legally obligated to pay as damages by reason of the liability covered by and as more fully defined in the Lead Underlying Policy . . .; provided always however, that this Policy shall not apply until the Insured and/or the Underlying Insurers . . . have paid or have been held liable to pay the full amount of the Underlying Limits for damages covered by the Lead Underlying Policy in accordance with . . . Limits of Liability.

XL016.

28.    Allied has not paid any amounts, and contests that any amounts are due, under the Allied Umbrella Policy with respect to the Judgment or otherwise in connection with the Underlying Lawsuit. *See Allied World National Assurance Co. v. Collin Reeves, et al.*, No. 2:23-cv-01794 (D. Ariz.).

**B.     The Allied Umbrella Policy and Zurich Policy**

29.    The Section I insuring clause of the Allied Umbrella Policy provides in pertinent part as follows:

> **A.**    We will pay on behalf of the **Insured** those sums in excess of the **Retained Limit** that the **Insured** becomes legally obligated to pay as damages by reason of liability imposed by law because of **Bodily Injury, Property Damage** or **Personal Injury and Advertising Injury** to which this insurance applies or because of **Bodily Injury** or **Property Damage** to which this insurance applies assumed by the **Insured** under an **Insured Contract**.

- 7 -

\*   \*   \*

AW067. Section I.B. states that the Allied Umbrella Policy only applies where **Bodily Injury** "is caused by an **Occurrence**," defined in pertinent part by Endorsement 13 of the Allied Umbrella Policy as an "accident." AW067; AW026.

30. Section VI.F. of the Allied Umbrella Policy defines **Insured** in pertinent part as follows:

> F. **Insured** means:
>
> 1. the **Named Insured**:
>
> \*   \*   \*
>
> 3. your employees other than your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business;
>
> \*   \*   \*
>
> 7. any person or organization, other than the **Named Insured**, included as an Additional Insured under **Scheduled Underlying Insurance**, but not for broader coverage than would be afforded by such **Scheduled Underlying Insurance**.
>
> Notwithstanding any of the above:
>
> \*   \*   \*
>
> b. no person or organization is an **Insured** under this policy who is not an **Insured** under applicable **Scheduled Underlying Insurance**....
>
> \*   \*   \*

AW085-86.  Under the Allied Umbrella Policy, "the words 'you' and 'your' refer to the Named Insured shown in the Declarations and any other person or organization qualifying" as such.  AW067.  Endorsement 1 of the Allied Umbrella Policy identifies all **Scheduled Underlying Insurance**, and includes the Zurich Policy.  AW006.

31. Endorsement No. 20 of the Allied Umbrella Policy broadens the definition of **Named Insured** to include any "person or organization . . . named as the **Named Insured** in Item 1. of the Declarations" (i.e., Hines Interests), as well as, among other things, "entities" and "businesses" in which a "Named Insured, individually or through a controlled entity, has more than fifty percent (50%) ownership interest in or exercises management or financial control over at the inception date of this policy, provided all have been declared to us prior to the inception date of this policy."  AW053.

32. Reeves is not designated in the Declarations of the Allied Umbrella Policy; nor does he otherwise qualify as a **Named Insured** thereunder.  The Allied Umbrella Policy does not specifically identify Hines GS as a **Named Insured**.  Nor does it identify entities so declared to Allied as of the time the Allied Umbrella Policy was issued in accordance with Endorsement 20.  At the time of the Collision, Reeves was an employee of Hines GS – not of Hines Interests.  It is the burden of the Other Defendants or Reeves, as the case may be, to demonstrate that, at the time of the Collision, Hines GS qualified as a **Named Insured** in accordance with the terms of the Allied Umbrella Policy necessary, as a threshold matter, to establish Reeves as a potential **Insured** thereunder.

33. The Allied Umbrella Policy, at Endorsement No. 14, includes an Auto Liability Limitation that excludes coverage for liability arising out of the ownership, maintenance, use, or entrustment to others of any Auto owned or operated by or rented or loaned to any **Insured**.  The Auto Endorsement does not apply, however, if auto liability coverage is provided by **Scheduled Underlying Insurance** (i.e., the Zurich Policy), the terms of which are then followed by the Allied Umbrella Policy:

**AUTO LIABILITY LIMITATION ENDORSEMENT**

It is agreed that the following exclusion is added under Section IV., "Exclusions":

**Auto Liability**

This policy does not provide coverage for any liability arising out of the ownership, maintenance, use or entrustment to others of any **Auto** owned or operated by or rented or loaned to any **Insured**. Use includes the operation and the loading and unloading of the **Auto**.

However, this exclusion will not apply if coverage is provided by a policy listed in the **Scheduled Underlying Insurance**.

Coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions and exclusions of such **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance**.

AW027.

34. The Zurich Policy's "Covered Autos Liability Coverage" part, set forth in Section II of the Zurich Policy, provides in pertinent part:

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

ZUR019.

35. Section II.A.1. of the Zurich Policy states in pertinent part as follows:

**1. Who Is An Insured**

The following are "insureds":

    **a.** You, for any covered "auto".

    **b.** Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

\*     \*     \*

      **(2)**    Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

* * *

ZUR019-20. The Zurich Policy states that "[t]hroughout this policy, the words 'you' and 'your' refer to the Named Insured shown in the Declarations." ZUR018.

36. The Zurich Policy includes a "Who Is An Insured Amendment– Broad Form" endorsement that broadens the definition of Named Insured to include, among other things, certain organizations in which Hines Interests "maintain [s] an ownership interest of more than 50%" as a "Named Insured." ZUR038.

37. Neither Hines GS nor Reeves are identified in the Zurich Policy Declarations as a Named Insured. ZUR005-07. At the time of the Collision, Reeves was an employee of Hines GS – not of Hines Interests. It is the burden of the Other Defendants or Reeves, as the case may be, to demonstrate that, at the time of the Collision, Hines GS qualified as a Named Insured necessary, as a threshold matter, to establish Reeves as a potential insured under the Zurich Policy.

38. The Zurich Policy also contains a "Coverage Extension Endorsement – Liability Only" that modifies the definition of "insured" set forth above in Section II.A.1. in pertinent part as follows:

    **A.**    **Amended Who Is An Insured**

        **1.**    The following is added to the **Who Is An Insured** Provision in **Section II – Covered Autos Liability Coverage**:

        The following are also "insureds":

        **a.**    Any "employee" of yours is an "insured" while using a covered "auto" you don't own, hire or borrow for acts performed within the scope of employment by you. Any "employee" of yours is also an "insured" while operating an "auto" hired or rented under a contract or agreement in

an "employee's" name, with your permission, while performing duties related to the conduct of your business.

\* \* \*

ZUR032.

39. The Zurich Policy contains an "Employees As Insureds" endorsement which amends Section II.A.1., set forth above, and includes as an "insured" "[a]ny 'employee' of yours ... while using a covered 'auto' you [do not] own, hire or borrow in your business or your personal affairs." ZUR133.

40. Under the Zurich Policy, a covered "auto" means "any 'Auto'"; and "Auto" means "[a] land motor vehicle, 'trailer' or semitrailer designed for travel on public roads;" or "[a]ny other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged." ZUR018; ZUR027.

41. Even assuming Hines GS, itself, qualifies as a Named Insured under the Zurich Policy (and the Allied Umbrella Policy to the extent it follows that form, the XL Excess Policy to the extent it follows the form of the Allied Umbrella Policy), its employee Reeves nonetheless still does not qualify as an insured under the auto liability coverages afforded thereunder given the facts and circumstances of and surrounding the Collision.

42. The Allied Umbrella Policy furthermore includes an exclusion for expected or intended injury, which provides, in pertinent part as follows:

> K.  **Expected or Intended Injury**
>
> This policy does not provide coverage for **Bodily Injury** or **Property Damage** expected or intended from the standpoint of the **Insured** . . .

AW074. The Zurich Policy expressly provides an exclusion to the same effect. ZUR034. Moreover, both Policies only provide coverage for injuries arising out of "accidents."

43. The Allied Umbrella Policy also includes an exclusion for liquor liability which provides, in pertinent part as follows:

- 12 -

> **M.    Liquor Liability**
>
> This policy does not provide coverage for **Bodily Injury** or **Property Damage** for which any Insured may be held liable by reason of:
>
> \*       \*       \*
>
> > 3. any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
>
> However, this exclusion will not apply if coverage is provided for such **Bodily Injury** or **Property Damage** by **Scheduled Underlying Insurance**.
>
> Coverage under this policy for such **Bodily Injury** or **Property Damage** will follow the terms, definitions, conditions and exclusions of **Scheduled Underlying Insurance**, subject to the **Policy Period**, Limits of Insurance, premium and all other terms, definitions, conditions and exclusions of this policy. Provided, however, that coverage provided by this policy will be no broader than the coverage provided by **Scheduled Underlying Insurance.**

AW074.  The Zurich Policy does not contain terms dealing with liquor liability that the Allied Umbrella Policy is required to follow.  Nor do the terms and conditions of the Zurich Policy obviate the application of this exclusion as set forth in the Allied Umbrella Policy.

**D.    Governing Law**

44.    Each of the Policies was issued for the same time period to Hines Interests as the only specifically named insured, and caused to be delivered to Hines Interests at its Houston, Texas headquarters.

45.    The Policies were negotiated and brokered through Marsh USA and, on information and belief, delivered to Hines Interests in Texas.  On information and belief, the premiums due and paid on each of the Policies were paid from Texas.

46.    The Policies provide nationwide (or even broader) liability coverage applicable to the wide range of business activities.  There is no single principal location of

the myriad risks insured by the Policies. Texas has the most significant relationship to the Policies. Upon information and belief, Hines Interests' expectation (and the expectation of any additional Named Insured) at the time the Policies were issued was that Texas law would govern the interpretation, application and enforcement of the Policies.

47. Under applicable Arizona conflicts of law principles, Texas law should govern the interpretation, application and enforcement of the XL Excess Policy relating to any claims for coverage arising out of the Collision, and with respect to the Judgment as currently exists or later may be finalized in the Underlying Lawsuit, although XL acknowledges that this Court – per District Judge Silver in a different insurance coverage Action related to the Collision – has ruled on the pleadings and without the completion of choice of law-related discovery, that Arizona law applies to the Allied Umbrella Policy. *See Allied World National Assurance Co. v. Collin Reeves, et al.,* No. 2:23-cv-01794 (D. Ariz.) (at ECF. No.68). XL respectfully disagrees therewith.

## **COUNT I**

48. XL Insurance re-alleges the allegations set forth in paragraphs 1 through 47 above as if fully set forth herein.

49. XL has not been made aware of information sufficient to establish Hines GS as a Named Insured under the Policies, which is defendants' burden to prove to the extent any one or more of them seek indemnity under the XL Excess Policy based on Reeves having been employed by Hines GS at the time of the Collision.

50. If Hines GS does not qualify as a Named Insured under the Policies, no coverage is afforded to any of its employees for their conduct, irrespective of how such conduct might be characterized.

51. Even assuming that Hines GS qualifies as a Named Insured under the Zurich Policy and thus the Policies (including the XL Excess Policy), Reeves does not qualify as an insured employee of that entity for other reasons. Nor does Reeves qualify as an insured under the Policies on any other basis.

52. At the time of the Collision, Reeves was **not** acting within the course and scope of his employment with Hines GS. At the time of the Collision, Reeves was **not** using his personal vehicle in the "business or personal affairs" of Hines GS. Nor does Reeves fall within the definition of "you" or "your" as set forth in the Zurich Policy or Allied Umbrella Policy that otherwise might potentially qualify Reeves as an insured under any of the Policies.

53. Accordingly, no coverage is available to Reeves under the XL Excess Policy, and neither Reeves nor the Other Defendants, in any capacity, have any rights to or under the XL Excess Policy.

WHEREFORE, XL respectfully requests that this Court declare that XL owes no obligation to indemnify Reeves, or the Other Defendants in any capacity, in connection with the Underlying Lawsuit, or any final judgment therein, under the XL Excess Policy, and award XL its costs and such other relief as this Court deems just and proper.

## COUNT II

54. XL realleges the allegations set forth in paragraphs 1 through 53 above as if fully set forth herein.

55. Reeves and the Other Defendants are precluded by law and estopped from asserting in this action facts inconsistent with, or contrary to, those necessary and found in the Underlying Lawsuit sufficient to support any final judgment awarding punitive damages. Similarly, Reeves and anyone claiming through him derivatively are precluded by law from denying in this action as true the elements of the criminal offense of which Reeves was adjudged guilty.

56. Under the facts and circumstances surrounding the Collision, the Collision was not an "accident." Moreover and in all events, Reeves expected or intended the bodily injuries suffered by the Decedents. For either or both reasons, coverage with respect to Reeves's liability for the Collision, or any judgment finalized against him in the Underlying Lawsuit, is not available under the Zurich Policy or the Allied Umbrella Policy and

therefore unavailable as well under the XL Excess Policy which follows the form of the Allied Umbrella Policy.

57. The use of alcoholic beverages is subject to the criminal laws of the State of Arizona, including A.R.S.§ 13-1201(A), which makes it a crime to "endanger[] another person with a substantial risk of imminent death or physical injury." Reeves pled guilty to that statute in connection with his use of alcohol and the resulting Collision. For that reason, coverage with respect to Reeves's liability for the Collision, or any judgment finalized against him in the Underlying Lawsuit, is not available under the Zurich Policy or the Allied Umbrella Policy, and therefore unavailable as well under the XL Excess Policy which follows the form of the Allied Umbrella Policy.

WHEREFORE, XL respectfully requests that this Court declare that XL owes no obligation to indemnify Reeves, or the Other Defendants in any capacity, in connection with the Underlying Lawsuit, or any final judgment therein, under the XL Excess Policy, and award XL its costs and such other relief as this Court deems just and proper.

## COUNT III

58. XL realleges the allegations set forth in paragraphs 1 through 57 above as if fully set forth herein.

59. The Judgment in the Underlying Lawsuit awarded punitive damages directly as against Reeves based on his own conduct.

60. Under Texas law, Texas public policy prohibits an insurer from indemnifying an individual person for punitive damages awarded directly against such person based on his/her own conduct, as is the case with the Judgment, or any final judgment entered against Reeves in the Underlying Lawsuit awarding punitive damages.

WHEREFORE, XL respectfully requests this Court declare that XL owes no obligation to indemnify Reeves, or the Other Defendants, in any capacity, for any portion of the Judgment, or any final judgment entered in the Underlying Lawsuit, awarding punitive damages against Reeves, under the XL Excess Policy, and award XL its costs herein and such other relief as this Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(d), Federal Rules of Civil Procedure, XL hereby demands a jury trial on all issues so triable.

Dated: January 3, 2025          DENTONS US LLP

By: */s/ Monica R. Thompson*
     Monica R. Thompson

*Attorneys for Plaintiff XL Insurance America, Inc.*